UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRANDON EDWARDS,      *Movant*, | : : : | CIVIL CASE NUMBER: |
| v. | : : | 3:15-cv-00723 (VLB) |
| UNITED STATES OF AMERICA,      *Respondent*. | : : : | April 4, 2016 |

## MEMORANDUM OF DECISION

Brandon Edwards, pro se and incarcerated, challenges his 2012 guilty-plea conviction and sentence for unlawful possession of ammunition.  In his 28 U.S.C. § 2255 motion, Edwards raises claims pertaining to the plea negotiation process, sentencing, and appeal.  He first argues that the Government committed fraud by introducing, and Edwards's first attorney erred by permitting, a collateral attack waiver.  Edwards next argues that his second attorney, appointed after the plea proceedings, was generally uncommunicative and unprepared and failed to argue that Edwards's prior state conviction did not constitute a serious drug offense under the Armed Career Criminal Act ("ACCA") because the State recited facts from a police report after Edwards entered his plea and because those facts, even if confirmed by him, were too vague to ascertain the specific conduct or controlled substance involved.  He finally argues that his second attorney, who also represented him on appeal, failed to brief Edwards's preferred objections to the ACCA enhancement.  Edwards requests an evidentiary hearing to resolve these claims.  For the following reasons, the Court DISMISSES the claim pertaining to the plea negotiation process for want of jurisdiction and DENIES the remaining claims without an evidentiary hearing.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A.  **Criminal Proceedings**

  *1. Plea Negotiation Process*

Edwards was charged with unlawful possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 3-1 (Indictment). While represented by Attorney Howard Gemeiner ("Attorney One"), Edwards and the Government entered into a plea agreement in which Edwards:

> agree[d] not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence imposed by the Court if that sentence does not exceed 120 months of imprisonment, a term of supervised release of three years, and a $250,000 fine . . . .

ECF No. 3-6 (Plea Agreement) at 6 (.pdf pagination). Edwards entered his plea before a magistrate judge, who recommended that the trial court accept Edwards's plea as knowingly and voluntarily given. ECF No. 3-13 (Plea Tr.) at 36–37. The trial court later accepted the plea, imposed a sentence *exceeding* 120 months' imprisonment and *exceeding* three years' supervised release, and waived a fine because of Edwards's inability to pay. ECF Nos. 3-7 (Sentencing Tr.) at 49:16–20, 50:20–21; 3-15 (Text Order).

  *2. Sentencing Proceedings*

Before Edwards entered into his plea agreement, the Government filed notice of its intent to seek a sentence enhancement pursuant to the ACCA, informing Edwards that the mandatory minimum sentence of fifteen years' imprisonment applied because Edwards had three prior state narcotics convictions, all in violation of Connecticut General Statutes § 21a-277(a). ECF

2

No. 3-2 (Notice).  Edwards later filed a pro se sentencing memorandum objecting to the ACCA enhancement.  D. Conn. 10-cr-232, ECF No. 71 (Pro Se Mem.).  He reasoned that the plea colloquies from his underlying convictions were insufficient because the factual circumstances merely consisted of the State reading a police report into the record and Edwards could not have confirmed those facts because he pleaded guilty before they had been read into the record. *Id.* at 5–6.  He also argued that "even were not the case," those facts were insufficient to establish the controlled substance involved.  *Id.* at 7.  Shortly thereafter, the trial court granted Edwards's motion for new counsel and appointed Attorney Jonathan J. Einhorn ("Attorney Two") to represent Edwards. D. Conn. 10-cr-232, ECF Nos. 61 (Mot.); 74 (Text Entry); 75 (Order).

In its sentencing memorandum, the Government argued for the ACCA enhancement.  Conn. 10-cr-232, ECF No. 99 (Sentencing Mem.).  The Government provided the change-of-plea transcripts from each of Edwards's three prior narcotics convictions because the prior convictions under state law did not automatically qualify as serious drug offenses under the ACCA.  Conn. 10-cr-232, ECF No. 99-1–99-33 (Exs.).  According to the change-of-plea transcript from the last state conviction (the subject of Edwards's challenge here), Edwards pleaded guilty to "possession of narcotics with intent to sell under 21a-277a," the prosecutor stated that the police seized "36.3 grams of cocaine" and various paraphernalia used to distribute narcotics, Edwards confirmed that he did what the State had accused him of, and the Court then accepted the plea as knowingly and voluntarily given.  Conn. 10-cr-232, ECF No. 99-3 (Ex. C).  In Edwards's

3

sentencing memorandum, Attorney Two argued that Edwards's prior narcotics convictions could not serve as predicate offenses for three reasons: (1) none of the plea colloquies established that the state courts made a finding concerning the specific drugs; (2) none of the plea colloquies established that the state courts made a finding concerning the quantity of drugs; and (3) the plea colloquy concerning the last conviction did not indicate the statute of conviction. Conn. 10-cr-232, ECF No. 108 (Sentencing Mem.) at 3–7.

Edwards's sentencing was scheduled for early September; however, the Court pushed the date back to late September because Edwards had articulated concerns about the adequacy of Attorney Two's representation. Conn. 10-cr-232, ECF No. 121 (Hr'g Tr.). When Edwards appeared for sentencing in late September, the Court granted a short recess so that Edwards could iron out his disagreements with Attorney Two. ECF No. 3-7 (Sentencing Tr.) at 8:24–9:10. After the recess, both Edwards and Attorney Two indicated that they were ready to proceed with sentencing. *Id.* at 10:1–5. During sentencing, Attorney Two reiterated his arguments from his sentencing memorandum, including his argument that there was no specific finding concerning the narcotic involved, and emphasized that the findings from the plea colloquies were generally insufficient, "as your Honor knows from the *Cohens* decision."[1] *Id.* at 14:14–19:21. Edwards

---

[1] The *Cohens* decision refers to *United States v. Cohens*, 2008 WL 3824758, at *5 (D. Conn. Aug. 13, 2008). In that case, the district court ruled that the defendant's prior state conviction was not a serious drug offense because the State read the police report into the record *after* the defendant pleaded guilty. Edwards's claim of ineffective assistance appears to be partially based on counsel's failure to raise the arguments from *Cohens*, i.e., the police report read into the record at Edwards's change-of-plea hearing was insufficient because he

4

also interjected, arguing that the plea colloquy from his last state conviction was insufficient because he only confirmed what was alleged in the police report. *Id.* at 20:15–22:2. The trial court nonetheless ruled that the ACCA enhancement applied. *Id.* at 49:12–15. Edwards was principally sentenced to 180 months' imprisonment, to be followed by five years' supervised release. *Id.* at 49:16–20. The trial court did not impose a fine. *Id.* at 50:20–21.

    3. *Appeal Proceedings*

On appeal, Attorney Two argued that that Edwards's prior narcotics convictions could not serve as predicate offenses for the reasons articulated in his sentencing memorandum and during sentencing. ECF No. 3-8 (Appellant Br.) at 8–14. Edwards also filed a pro se brief. ECF No. 3-9 (Pro Se Br.) Edwards argued that the ACCA enhancement did not apply, but his arguments differed slightly from the arguments that he raised below. *Id.* at 11–13. He argued that he confirmed his guilt of the offense, not the underlying facts as alleged in the police report. *Id.* at 11–12. He also argued that even if he had confirmed these facts, they did not identify the specific conduct involved in the underlying offense. *Id.* at 12–13. Edwards separately challenged the denial of his motion for appointment of new counsel, alleging that Attorney Two was generally not communicative, was generally unprepared, and had specifically failed to raise Edwards's preferred preferred challenges to the ACCA enhancement. *Id.* at 13–14. The Second Circuit summarily affirmed the judgment. ECF No. 10 (Summary Order). It ruled that "[b]ased on the record before it, the [trial] court correctly

---

could not have confirmed the facts of the police report because he pleaded guilty before those facts were read into the record.

5

found that each of the three convictions constituted serious drug offenses within the meaning of Section 924(e)." *Id.* The Second Circuit further ruled that "the remainder of Edwards' arguments, both in his counseled and pro se briefs," were meritless. *Id.*

B.     Section 2255 Proceedings

Pursuant to Section 2255, Edwards now challenges his federal conviction and sentence. ECF No. 1 (§ 2255 Mot.). His claims for relief relate to the plea negotiation process, sentencing, and appeal, and he moves for an evidentiary hearing on each of them.[2] *Id.* With respect to the plea negotiation process, Edwards argues that "fraud was committed by the government[,] and unconstitutionally ineffective assistance of defense counsel rendered[,] when Edwards was advised to sign the offered plea agreement containing a collateral attack waiver." *Id.* at 6–8. He reasons that the collateral attack waiver created an inherent conflict of interest: a criminal defendant has an interest in preserving his post-conviction challenges and his attorney has an interest in having his client waive such challenges because they relate to that attorney's past and future performance. *Id.* He further reasons that the Government commits fraud by inducing another attorney to commit professional misconduct. *Id.* Edwards relies on a Kentucky Supreme Court decision, *United States v. Kentucky Bar Ass'n*, 439 S.W.3d 136, 140 (Ky. 2014), which held that "the use of ineffective-assistance-of-counsel (IAC) waivers in plea agreements violates [Kentucky's]

---

[2] Edwards also argues that Attorney One provided constitutional ineffective assistance and that the trial court erred by allowing him to give his guilty plea to a magistrate judge. ECF No. 1 (§ 2255 Mot.) at 9–12. Edwards subsequently moved to withdraw these claims. ECF No. 6 (Reply) at 3. The Court grants him permission to do so and declines to address the withdrawn claims.

6

Rules of Professional Conduct." Edwards also relies on a Department of Justice memorandum, which informed federal prosecutors that they should no longer seek such waivers and that they should decline to enforce any existing waivers. ECF No. 3-12 (DOJ Mem.).

With respect to the sentencing proceedings, Edwards raises two claims. In his first claim, Edwards argues that "counsel rendered constitutionally ineffective assistance when failing to reasonably communicate with his client and properly prepare a mitigating defense for the penalty phase of Edwards['s] criminal proceedings." *Id.* at 19–20. Edwards alleges that he met Attorney Two only once prior to appearing for sentencing in early September and that Edwards's attempts to contact him were fruitless. *Id.* Edwards does not allege how Attorney Two's lack of communication and preparedness affected the outcome of Edwards's sentencing proceedings. *Id.*

Edwards also argues that "[trial] counsel provided constitutionally ineffective assistance of counsel resulting in the government and the court mistakenly qualifying one of Edwards' prior convictions as a predicate under the ACCA." *Id.* at 13–18. Although his argument is difficult to follow at points, Edwards seems to argue that Attorney Two should have raised the following objections to the ACCA enhancement.[3] *Id.* Attorney Two should have argued

---

[3] Edwards argues in his reply that he only needs to demonstrate that the counsel's arguments were frivolous and that the Court should conduct an evidentiary hearing to determine what arguments competent counsel would have presented. ECF No. 6 (Reply) at 10–12, 14. However, this is not how Section 2255 proceedings work: Edwards must allege a facially valid claim, i.e., facts supporting both prongs of *Strickland*, before he is entitled to a hearing. *See Curshen v. United States*, 596 F. App'x 14, 15 (2d Cir. 2015) ("[T]to be entitled to a hearing, a movant must allege a "plausible or viable" claim."). The fact that

that the plea colloquy was insufficient to establish any facts because it was based on a police report read into the record after Edwards pleaded guilty. *See id.* at 18 ("Moreover, there is no indication as to Edwards assenting . . . as he plead[ed] guilty before the prosecutor gave any facts to the court."). Attorney Two also should have objected because the facts contained in the police report, even if accepted as facts, were too "vague" to establish the "specific conduct or specific substances under § 21a-277a." *Id.* at 17–18.

With respect to the appeal proceedings, Edwards takes issue with Attorney Two's argument that the plea colloquy did not identify the statute of conviction. *Id.* at 21–24. He contends that this argument was factually inaccurate because the plea colloquy clearly identified the statute of conviction. *Id.* at 24. He also argues that Attorney Two raised this argument rather than "other more prominent factual arguments," but Edwards does not articulate what those arguments should have been. *Id.* Liberally construed, the Court assumes that those arguments would have been his preferred objections to the ACCA and that prejudice flowed from the application of the ACCA. *Id.* at 13–18.

## DISCUSSION

A. <u>Timeliness</u>

The Government argues that it is unclear whether Edwards's Section 2255 motion is timely because the motion was received after, but dated before, the expiration of the applicable limitations period, as calculated by the Government. ECF No. 3 (Answer) at 10. Specifically, the Government contends, without

---

counsel raised a bad argument does not necessarily imply that a better one existed. The Court therefore construes Edwards's claim to be predicated on the purportedly better arguments that he identifies in his Section 2255 motion.

8

citation to authority, that the Court should not accept Edwards's signature date as the filing date unless he provides an averment, declaration, or notarized statement indicating that he gave his Section 2255 motion to prison authorities on the date it was signed. *Id.* at 12.

The Government is wrong. First, the requirement of a sworn statement derives from the Federal Rules of Appellate Procedure, *see* Fed. R. App. P. 4(c)(1), which do not apply here. Second, even assuming that a sworn statement is required, the Court doubts that Edwards bears the burden of producing such a statement absent evidence from the Government that his signature date is unreliable. *See Johnson v. Coombe*, 156 F.Supp.2d 273, 277 (S.D.N.Y. 2001) ("[A]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it." (second brackets in original) (footnote and quotation marks omitted)). Third, even assuming that Edwards must produce a sworn statement even in the absence of contrary evidence, he subsequently submitted a notarized statement, ECF No. 6 (Reply) at 17, effectively mooting the Government's argument, *Covington v. DiBiase*, 1999 WL 48775, at *1 (2d Cir. 1999) (holding that prisoner's letter, submitted after complaint filed, established that complaint given to prison officials prior to expiration of statute of limitations).

B.  **Merits**

Section 2255 enables a prisoner is federal custody to petition a federal court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of

jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citation omitted). Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For the following reasons, the Court DISMISSES the claim pertaining to the plea negotiation process because Edwards lacks standing to raise it and DENIES the remaining claims without an evidentiary hearing because the records conclusively demonstrate that Edwards is not entitled to relief.

1. *Plea Negotiation Process*

Edwards first argues that the Government committed prosecutorial misconduct rising to the level of a due process violation by introducing, and Attorney One was constitutionally ineffective for permitting, a collateral attack waiver in the plea agreement. ECF No. 1 (§ 2255 Mot.) at 6–8. Edwards reasons that his collateral attack waiver created an actual conflict of interest between him and his counsel and that the Government created the conflict by suggesting the terms of the waiver. *Id.* The Court has profound reservations about the ethics of plea agreements in which a criminal defendant, on the advice of his counsel and at the initiation of the Government, agrees to waive past and prospective ineffective assistance claims against the advising attorney.[4] *See* ABA Resolution

---

[4] The Court does not question the validity of collateral attack waivers and agrees that such waivers are generally enforceable, *see Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002), as well as "legal and ethical," ECF No. 12 (DOJ Mem.). But a collateral attack waiver is only

10

113E, Adopted by the House of Delegates (2013) (Report); NACDL Ethics Advisory Committee Formal Opinion 12–02 (Oct. 2012); *cf.* Conn. R. Prof. Conduct 1.8(h). The Court doubts that such a waiver would be knowing, informed, and enforceable. The Court also doubts that the pro forma collateral attack waiver contained in Edwards's plea agreement would not be narrowly construed so as to not encompass any waiver of questionable ethics and constitutionality. *Cf. United States v. Oladimeji*, 463 F.3d 152, 157 (2d Cir. 2006) (eschewing "a broad and literal reading of the [plea] agreement" when interpreting the word "sentence").

As interesting as these questions may be, the Court lacks the constitutional power to adjudicate them. Article III of the Constitution of the United States confines the jurisdiction of federal courts to actual "cases" and "controversies." *See* U.S. Const. Art. III § 2, cl. 1. From this constitutional limitation on the power of the judiciary, the Supreme Court has "deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). A party has standing only if, *inter alia*, the injured party shows that it is "likely, as opposed to merely speculative, that [his] injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal citations omitted). The issue of

---

enforceable if a defendant waives his rights knowingly, voluntarily, and intelligently. *See Frederick*, 308 F.3d at 195. The issue that Edwards seeks to raise, which the Court lacks the power to address, is how he could have knowingly, voluntarily, and intelligently waived his right to a collateral challenge when his trusted advisor's interest in waiver was in direct conflict with Edwards's own interest.

11

standing is a threshold jurisdictional issue, which a federal court must decide before reaching the merits.  *Ross v. Lantz,* 408 F.3d 121 (2d Cir. 2005)

With respect to Edwards's claims concerning his collateral attack waiver, a favorable decision will not inure to Edwards's benefit and would not have done so even at the time Edwards's filed his Section 2255 motion.  To address the question of standing, the Court must determine what the appropriate relief would be for such a claim.  Section 2243 of the Judicial Code requires federal courts to "dispose of [habeas corpus petitions] as law and justice require."  28 U.S.C. § 2243.  This command has been construed to permit courts to fashion any appropriate equitable remedy.  *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("We have interpreted this broader remedial language to permit relief short of release."); *United States v. Gordon*, 156 F.3d 376, 381–82 (2d Cir. 1998) ("§ 2255 leaves the choice of relief in a habeas case to the sound discretion of the judge ruling on the motion.").  When it comes to ineffective assistance of counsel claims, the sound discretion of the district court is limited only by the requirement that "the remedy 'should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'"  *Id.* at 381 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)).  Likewise, the remedy for a due process violation must only restore the movant "'to the circumstances that would have existed had there been no constitutional error.'"  *Ferrara v. United States*, 372 F.Supp.2d 108, 113 (D. Mass. 2005) (quoting *United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000)).

Here, the only just and fair remedy would be to eliminate the collateral

attack waiver to the extent that it prevents Edwards from bringing ineffective assistance claims. Edwards alleges that the purported constitutional violations prevented him from understanding the collateral attack waiver and its implications; he does not argue that the alleged violations impugned any aspect of his conviction or sentence. ECF No. 1 (§2255 Mot.) at 6–8. Thus, returning him to his original position simply means enforcing the non-suspect portions of the plea agreement—that is, everything other than his agreement to waive ineffective assistance of counsel claims in a collateral attack.

If the Court were to order such relief, however, Edwards would wind up in exactly the same position as he occupied when his conviction became final because his plea agreement does not bar him from launching a collateral attack.[5] The collateral attack waiver does not bar Edwards from challenging his term of imprisonment because Edwards was sentenced to more than 120 months' imprisonment. The collateral attack waiver does not bar him from challenging his term of supervised release because Edwards was sentenced to more than three years' supervised release. The remaining portion of the collateral attack waiver concerns a fine, but the district court waived a fine because of Edwards's inability

---

[5] The Government also argues that the remedy would have no effect because the DOJ memorandum prevents them from seeking to enforce a collateral attack waiver. ECF No. 3 (Answer) at 24. This argument is essentially a mootness argument because it implicates how the Government would chose to behave *after* the Section 2255 motion was filed. *See Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir. 1980) ("This 'time element of standing' comes under the rubric of mootness doctrine."). However, a respondent's voluntary cessation of unlawful conduct generally does not moot a case or controversy. *See Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 727 (2013) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.").

13

to pay.  In other words, there is nothing for the Court to modify because no portion of the collateral waiver applies.  The Court therefore lacks the power to address Edwards's claim because it could not have been redressed even at the time that Edwards's filed his Section 2255 motion.  The claim is DISMISSED for lack of jurisdiction.

2. *Sentencing Proceedings*

Edwards next challenges Attorney Two's representation at sentencing. These claims are analyzed pursuant to the well-established standards governing ineffective assistance claims.  To prevail, a movant must both allege facts demonstrating that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  As to the first showing, a movant must demonstrate that counsel's performance "amounted to incompetence under 'prevailing professional norms'" rather than demonstrating that the performance "deviated from best practices or most common custom."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).  As to the second showing, a movant must demonstrate "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 964.  Edwards's ineffective assistance of trial counsel claims fall into one of two categories: (a) generalized complaints concerning Attorney Two's communication and preparation; and (b) specific complaints concerning the objections that Attorney Two should have raised in opposition to

the ACCA enhancement.  The Court addresses each in turn.

> a. General Lack of Communication and Preparation

Edwards first argues that Attorney Two was generally uncommunicative and unprepared for sentencing.  ECF No. 1 (§ 2255 Mot.) at 19–20. The Government offers three reasons for denying this claim.  It first argues that the mandate rule applies because "Edwards made this very same argument to the Second Circuit."  ECF No. 3 (Answer) at 32.  This is simply not true.  On direct appeal, Edwards argued that the district court erred in denying his purported motion for appointment of new counsel.  ECF No. 3-10 (Pro Se Br.) at 13–14.  The mandate rule "also precludes re-litigation of issues impliedly resolved by the appellate court's mandate," *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010), but the Government's second argument explains why the question of ineffective assistance of counsel was not "impliedly resolved" by the Second Circuit's decision on direct appeal.

The Government's second argument is premised on waiver.  It contends that Edwards waived his ineffective assistance claim because he eventually assented to Attorney Two's representation despite his purported motion for new counsel.  ECF No. 3 (Answer) at 32–33.  The second argument fails because Edwards's conduct concerns waiving review of his purported motion for new counsel rather than his current ineffective assistance claim.  It also helpfully demonstrates why the first argument fails.  If Edwards waived review of his purported motion for new counsel, the Second Circuit's decision on this claim had no bearing on its substance.  And, even assuming that Edwards did not

waive this claim or that his waiver resulted in plain error review, the Second Circuit's review would require examination of the following four factors:

> (1) whether the defendant's motion was timely; (2) whether the trial court adequately inquired into the matter; (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication.

*United States v. Carathers*, 280 F. App'x 72, 76 (2d Cir. 2008). Because these factors differ from the standard articulated in *Strickland* and because the Second Circuit provided no rationale for ruling that Edwards's pro se arguments were meritless, this Court cannot definitely conclude that the Second Circuit's decision resolved the same legal issues undergirding the ineffective claim now asserted.

The Government finally attacks the merits of Edwards's claim, arguing that he *cannot demonstrate* prejudice because he received the mandatory minimum term of imprisonment. ECF No. 3 (Answer) at 33. But this isn't quite correct. Edwards could argue that Attorney's Two's generalized shortcomings resulted in the application of the mandatory minimum or in the unjust imposition of the other non-incarceratory portions of his sentence. The problem is that Edwards *has not alleged* prejudice with respect to these claims. As articulated, these claims rely entirely on conclusory allegations concerning the quality of Attorney Two's performance. But even assuming these allegations are sufficient to meet the first prong of *Strickland*, they are only half the battle. A federal court is not required to imagine all the ways that a criminal defendant could have been prejudiced by inadequate performance. The Court therefore DENIES the ineffective assistance claims predicated on generalized complaints concerning Attorney Two's

16

communication and preparedness.

### b. Failure to Challenge ACCA Enhancement

Edwards also argues that Attorney Two erred by failing to raise the following objections to the ACCA Enhancement: (1) the plea colloquy was insufficient to establish any facts because it was based on a police report read into the record after Edwards pleaded guilty; (2) the facts contained in the police report, even if accepted as facts, were too vague to establish the specific conduct or specific substances. The Government construes Edwards to be claiming that Attorney Two failed to make any objection to the ACCA enhancement, and the Government therefore argues that the claim is meritless because Attorney Two did, in fact, object to the enhancement at sentencing and on appeal. ECF No. 3 (Answer) at 29–32  The Court, however, construes Edwards to be making a more specific claim and because only a portion of Edwards's preferred objections were raised at sentencing and on appeal, the Government's arguments do not fully resolve this ineffective assistance claim. Edwards's claim nonetheless fails because his preferred objections are meritless.

Edwards's first preferred objection appears to be based on *United States v. Cohens*, 2008 WL 3824758, at *5 (D. Conn. Aug. 13, 2008). In that case, the district court ruled that the defendant's prior state conviction was not a serious drug offense because the State read the police report into the record *after* the defendant pleaded guilty. The *Cohens* decision (decided by the same judge as the judge presiding over Edwards's sentence) is distinguishable because Edwards confirmed the facts as stated by the State (which Edwards alleges were

17

contained in the police report), and his confirmation took place *before* his guilty plea was accepted by the state court.[6] The trial court was thus entitled to rely on those facts when applying the modified categorical approach.

Edwards's second preferred objection rests on the assumption that the facts were nonetheless insufficient to establish the specific conduct or substance involved. With respect to the specific conduct, federal courts employ the modified categorical approach because Connecticut General Statute § 21a-277a and 21 U.S.C. § 841 criminalize different conduct. *See Carter v. United States*, 731 F.Supp.2d 262, 271 (D. Conn. 2010) ("Because this statute criminalizes conduct that does and conduct that does not constitute a controlled substance offense under the guideline, i.e., the mere offer or gift of a controlled substance, it is not categorically a 'controlled substance offense.'"). In this case, it is clear that Edwards's conduct involved possession of cocaine with intent to sell, which would qualify as controlled substance offense. His conduct did not involve a mere offer to sell, which would not qualify as controlled substance offense. The change-of-plea hearing indicates that Edwards pleaded guilty to "possession of narcotics with intent to sell under 21a-277a." Conn. 10-cr-232, ECF No. 99-3 (Ex. C). Edwards also confirmed that the police seized "36.3 grams" during his plea hearing and before his plea was accepted and he was adjudicated guilty. *Id.*

Federal courts also employ the modified categorical approach to ascertain the substance involved. *See United States v. Madera*, 521 F.Supp.2d 149, 154-55

---

[6] Edwards operates under the assumption that his plea was entered when he said the word "guilty" (which occurred before the State read facts into the record) as opposed to when the state court accepted his plea as knowingly and voluntarily given (which occurred after Edwards confirmed the truth of those facts).

contained in the police report), and his confirmation took place *before* his guilty plea was accepted by the state court.[6] The trial court was thus entitled to rely on those facts when applying the modified categorical approach.

Edwards's second preferred objection rests on the assumption that the facts were nonetheless insufficient to establish the specific conduct or substance involved. With respect to the specific conduct, federal courts employ the modified categorical approach because Connecticut General Statute § 21a-277a and 21 U.S.C. § 841 criminalize different conduct. *See Carter v. United States*, 731 F.Supp.2d 262, 271 (D. Conn. 2010) ("Because this statute criminalizes conduct that does and conduct that does not constitute a controlled substance offense under the guideline, i.e., the mere offer or gift of a controlled substance, it is not categorically a 'controlled substance offense.'"). In this case, it is clear that Edwards's conduct involved possession of cocaine with intent to sell, which would qualify as controlled substance offense. His conduct did not involve a mere offer to sell, which would not qualify as controlled substance offense. The change-of-plea hearing indicates that Edwards pleaded guilty to "possession of narcotics with intent to sell under 21a-277a." Conn. 10-cr-232, ECF No. 99-3 (Ex. C). Edwards also confirmed that the police seized "36.3 grams" during his plea hearing and before his plea was accepted and he was adjudicated guilty. *Id.*

Federal courts also employ the modified categorical approach to ascertain the substance involved. *See United States v. Madera*, 521 F.Supp.2d 149, 154-55

---

[6] Edwards operates under the assumption that his plea was entered when he said the word "guilty" (which occurred before the State read facts into the record) as opposed to when the state court accepted his plea as knowingly and voluntarily given (which occurred after Edwards confirmed the truth of those facts).

(D. Conn. 2007) (applying the modified categorical approach because Connecticut, unlike the United States, lists benzylfentanyl or thenylfentanyl as controlled substances). Edwards's state offense clearly involved "36.3 grams of cocaine" rather than benzylfentanyl or thenylfentanyl. Conn. 10-cr-232, ECF No. 99-3 (Ex. C). Because Edwards's preferred objections would have been rejected, his claim for ineffective assistance of trial counsel fails, and the Court therefore DENIES it.

   3. *Appellate Proceedings*

Edwards also challenges Attorney Two's representation on appeal, arguing that he raised factually meritless objections to the ACCA at the expense of Edwards's preferred objections to the ACCA, which would have been meritorious. The two-part *Strickland* test also applies in the appellate context. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). The Court need not expend significant time addressing the claim because it is predicated on Edwards's preferred objections to the ACCA, which this Court has already found to be meritless. The Court therefore also DENIES the claim for ineffective assistance of appellate counsel.

## CONCLUSION

For the foregoing reasons, Edwards's Section 2255 Motion is DISMISSED in part and DENIED in part. The Court does so without an evidentiary hearing because the extant records conclusively establish that Edwards is entitled to no relief. Moreover, the Court declines to issue a certificate of appealability. The Court DENIES a certificate of appealability ("COA") with respect to his claim concerning the plea negotiations because Edwards cannot demonstrate "that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The remaining claims, which were denied on the merits, do not warrant a COA because the motion makes no substantial showing of a denial of a constitutional right. Finally, the Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from the Court's judgment would not be taken in good faith.

IT IS SO ORDERED.

                                                      /s/
                                        Vanessa L. Bryant
                                  United States District Judge

Dated at Hartford, Connecticut: April 4, 2016